1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN CARR POWERS,

      Plaintiff,

    v.

THE CITY OF SEATTLE, *et al.*,

      Defendants.

Case No.  C06-1727RSL

ORDER DENYING DEFENDANT
JENNIFER MCLEAN'S MOTION
FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion to dismiss filed by defendant Seattle Police Detective Jennifer McLean (Dkt. #39).  McLean argues that during the relevant time, she was working on an assignment with the Seattle Federal Bureau of Investigation ("FBI") as a specially deputized Federal Task Force Officer on the Public Integrity Task Force ("PITF" or the "task force").  McLean argues that as a specially deputized FBI agent, she cannot be sued for the tort of defamation, nor is she a "state actor" for purposes of liability under 42 U.S.C. § 1983.

For the reasons set forth below, the Court denies McLean's motion.

## II.  DISCUSSION

McLean was assigned to the PITF in January 2003.  The task force was established by a Memorandum of Understanding ("MOU") between the Seattle Police Department ("SPD") and

the Seattle FBI.  The mission of the PITF was to identify and target for prosecution individuals committing acts of public corruption.  The task force conducted an investigation into the suspected criminal activity of several SPD officers, including plaintiff.  The MOU provides, "Liability for any negligent or willful acts of task force employees, undertaken outside the terms of this MOU will be the sole responsibility of the respective employee and agency involved." MOU (Dkt. #39-2).

The FBI officially closed its investigation of Powers on March 29, 2005.  Around July 2005, McLean was assigned to the Criminal Intelligence Section of the SPD as a Detective, which is her current assignment with the SPD.  Plaintiff argues that after the FBI closed its investigation, McLean made numerous defamatory statements about him to various sources, including the press, witnesses,[1] and in summary documents provided to the SPD.  For example, Powers alleges that McLean wrote summary documents for the SPD that included statements that Powers used illegal drugs both on and off duty, participated in a residential burglary, engaged in improper conduct with exotic dancers, and associated with criminals.  Declaration of John Powers, (Dkt. #46) ("Powers Decl."), Ex. 3.  In addition, Powers alleges that McLean made defamatory statements, including that he used cocaine and had sex in his patrol car, to Seattle Times reporters Steve Miletich, Mike Carter, and Christine Willmsen.  Id.

McLean filed her motion as a 12(b)(6) motion for failure to state a claim upon which relief can be granted.  However, both parties filed, and the Court has considered, documents beyond the pleadings.  Therefore, the Court considers this as a motion for summary judgment. On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences

---

[1] Powers alleges that McLean told witness Robert Chandler that Powers engaged in criminal activity and "Powers shaves his body to avoid leaving DNA at the scenes where he commits crimes."  Powers Decl., Ex. 3.

1    supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v.

2    Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might

3    resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W.

4    Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

5          Brian Kipnis, Assistant United States Attorney and Chief, Civil Division, Office of the

6    United States Attorney for the Western District of Washington, has filed a certification pursuant

7    to 28 U.S.C. § 2679(d)(1) and the authority delegated to him pursuant to 28 C.F.R. § 15.3(a),

8    stating that "on the basis of the Amended Complaint in this matter and the information now

9    available to me, [I] hereby certify that defendant Jennifer McLean, was 'an employee of the

10   government' within the meaning of 28 U.S.C. § 2671 and 28 U.S.C. § 2679(d)(1), and was

11   acting within the scope of her office or employment at all times and in all respects relevant to

12   the allegations in the Complaint."  (Dkt. #35).

13         In addition to the certification, McLean has stated in a declaration that until April 2007,

14   she was authorized to act on behalf of a federal agency as reflected by her Special Deputation

15   Appointment forms.  The appointment forms and certification are sufficient to show that she was

16   a temporary federal employee during the relevant time.[2]  However, the Court must also consider

17   whether the challenged actions were performed in the scope of her federal employment.

18         The certification is "prima facie evidence that a federal employee was acting in the scope

19   of her employment at the time of the incident and is conclusive unless challenged."  Billings v.

20   United States, 57 F.3d 797, 800 (9th Cir. 1995).  If the certification is unchallenged or

21   unsuccessfully challenged, federal law requires substitution of the United States as a defendant

22

23   _____

24       [2] The FTCA defines "employee of the government" to include "persons acting on behalf
     of a federal agency in an official capacity, temporarily or permanently in the service of the

25   United States, whether with or without compensation."  28 U.S.C. § 2671.  In this case, there is
     a short lapse between the dates in McLean's appointment forms.  However, during that time, it

26   appears that she was at least a de facto federal officer.  See, e.g., Turley v. United States, 503 F.
     Supp. 2d 912, 915-16 (N.D. Ohio 2007) (numerous internal citations omitted).

27

28   ORDER DENYING MOTION
     FOR SUMMARY JUDGMENT - 3

1   for a tort claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*.

2   28 U.S.C. § 2679(d)(4).  Plaintiff challenges the certification.  The certification is subject to *de*

3   *novo* review.  Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993).  Plaintiff "bears the burden of

4   presenting evidence and disproving the Attorney General's certification by a preponderance of

5   the evidence."[3]  Billings, 57 F.3d at 800.  Also, in general, "the issue of scope of employment is

6   a question of fact, but becomes a question of law when the facts are undisputed and no

7   conflicting inferences are possible."  Id. at 801 (internal citation omitted).

8       To determine whether a defendant's alleged misconduct was within the scope of his or

9   her employment, district courts look to state law on respondeat superior.  Billings, 57 F.3d at

10  800.  Under Washington law, an employee's conduct is outside the scope of his or her

11  employment if "it is different in kind from that authorized, far beyond the authorized time or

12  space limits, or too little actuated by a purpose to serve the master."  Robel v. Roundup Corp.,

13  148 Wn.2d 35, 53 (2002) (citing Restatement (Second) of Agency §§ 228(1) & (2) (1958)).

14  "The proper inquiry is whether the employee was fulfilling his or her job functions at the time he

15  or she engaged in the injurious conduct."  Id. at 53-54.  Courts should consider "whether the

16  employee was, at the time, engaged in the performance of the duties required of him by his

17  contract of employment, or by specific direction of his employer; or, as sometimes stated,

18  whether he was engaged at the time in the furtherance of his employer's interest."  Lunz v. Dept.

19  of Labor & Indus., 50 Wn.2d 273, 278 (1957).

20      McLean and the Attorney General's designee state that McLean was acting during the

21  scope of her federal employment during all relevant times and with respect to all allegations in

22

23

24  ───────────────────

    [3] For example, the court in Billings affirmed the finding that plaintiff had not met her
    burden by merely speculating that the individual defendant was acting outside the scope of her
25  federal employment.  Billings, 57 F.3d at 800-801; see also Clamor v. United States, 240 F.3d
    1215 (9th Cir. 2001) (finding that a civilian employee of the Navy was not acting within the
26  scope of his employment when he was involved in an off-duty traffic accident in a rental car
    paid for by the Navy).
27

28  ORDER DENYING MOTION
    FOR SUMMARY JUDGMENT - 4

1    the complaint.  Declaration of Jennifer McLean (Dkt. #41) ("McLean Decl.") at ¶ 5;

2    Certification at p. 2.[4]  However, their assertions are conclusory.  For that reason, the Court

3    ordered the parties to provide additional briefing regarding what the FBI authorized McLean to

4    do after the investigation ended and whether the allegedly defamatory statements were made in

5    the course of her FBI employment.

6            In response, McLean's FBI supervisor, Mark Ferbrache, has provided a declaration

7    stating that after the investigation was closed, Detective McLean acted in a liaison role between

8    the PITF and the SPD.  Declaration of Mark Ferbrache, (Dkt. #82) ("Ferbrache Decl.") at ¶ 10.

9    That role "included preparing summaries of investigations and providing appropriate reports of

10   investigation to the management of the SPD, including the Chief of Police."  Id. at ¶¶ 10, 14.

11   Powers argues that McLean defamed him in reports she drafted for the SPD, including OPA

12   summaries and a summary titled "Confidential Work Product for the Chief of Police" which

13   described Powers' alleged misconduct.  However, Ferbrache's declaration and his deposition

14   testimony show that McLean's drafting of the reports and summaries was within the scope of

15   her federal employment.  Id; Ferbrache Dep. at p. 61.  This is true even though Ferbrache was

16   not aware of the *specific* summaries about which Powers complains.  Because McLean was

17   acting within the scope of her federal employment when she drafted those documents, she is not

18   the proper defendant for claims based on their contents.

19           Similarly, Ferbrache stated in both his declaration and his deposition that McLean's

20   statements to witnesses were made in the scope of her federal employment.[5]  Febrache Decl. at

21

22           [4] The Court has not considered the bulk of the Declaration of John Powers.  Most of the
23   declaration consists of argument, which is not appropriate in a declaration, rather than a
     recitation of facts.  The Court has considered the documents attached to the declaration.
24

25           [5] In discovery responses, Powers alleged that McLean told an officer's attorney that
     Powers was a "heavy for organized crime."  Powers Decl., Ex. 3.  He also alleged that McLean
26   told Sergeant Strand "and possibly others" that "Powers made death threats against McLean and
     deputy prosecuting attorney Hank Corscadden."  The certification and McLean's declaration
27

28   ORDER DENYING MOTION
     FOR SUMMARY JUDGMENT - 5

1    ¶¶ 9, 14; Ferbrache Dep. at p 61.  Powers has not provided any evidence to counter those

2    statements.  Accordingly, McLean is not a proper defendant for claims based on the statements

3    to witnesses.

4            However, at present plaintiff has raised a serious question as to whether McLean's post-

5    investigation contacts with the press were required by the FBI, made at its specific direction, or

6    in furtherance of the FBI's interest.  There is no evidence as to why McLean made the press

7    contacts at issue, if she indeed did so.[6]  McLean's declaration in support of the motion contains

8    only a legal conclusion, rather than facts or an explanation.  Ferbrache's declaration states that

9    "McLean's contacts with the press were part of her efforts to protect sources and to protect the

10   integrity of her investigation."  Ferbrache Decl. at ¶ 12.  He also states that "McLean's

11   discussions with local press reporters, in an attempt to protect confidential sources and

12   informants, was done within her duties as a member of the PITF."  Id. at ¶14.  However, during

13   his deposition, when asked about his declaration, Ferbrache clarified that his statements about

14   McLean's contacts with the press applied only to her contacts "during the time of the active

15   investigation."  Ferbrache Dep. at pp. 38-39; id. at pp. 34-35.  He has not stated that the post-

16   investigation contacts were within the scope of her federal employment or that they furthered the

17   FBI's purposes.  Instead, Ferbrache said that he discouraged McLean from talking to the press.

18   Id. at pp. 12, 60.  The FBI "generally do[es] not talk to the press."  Id. at p. 10.  He also testified

19   that after the investigation was over, McLean had no duty to continue the investigation for the

20   FBI.  Instead, her role was to tie up "loose ends . . . with respect to evidence, paperwork, and

21   specifically reviewing of the file for documents that were relevant to Powers' employment with

22   the [SPD] to be identified and reviewed and ultimately forwarded to the [SPD] for use in

23   _____

24   contend that those statements were made in the context of McLean's federal employment, and

25   Powers has not argued or provided any evidence to counter those assertions.

26        [6] Under the circumstances, the Court must assume for purposes of this motion that the
     post-investigation contacts with the press were made.
27

28   ORDER DENYING MOTION
     FOR SUMMARY JUDGMENT - 6

whatever administrative inquiry they may or may not decide to pursue." Id. at pp. 31-32.

Finally, pursuant to the MOU, "No information pertaining to PITF itself will be released to the

media without mutual approval of all participants."  Ferbrache was not aware of any agreement

to release information to the media about plaintiff. Id. at p. 23.  These facts all suggest that

McLean might have been acting outside the scope of her federal employment when she allegedly

spoke with the press after the conclusion of the investigation.[7]  These facts also distinguish this

case from Ward v. Gordon, 999 F.2d 1399, 1403 (9th Cir. 1993), in which the Ninth Circuit

considered whether an Army officer and physician was acting within the scope of his federal

employment when he allegedly committed medical malpractice during his residency program at

Children's Hospital.  The court concluded that when Gordon performed the medical services

that allegedly led to the injury, he was acting as an employee of both the hospital and the Army:

"Gordon acted precisely and only as the government expected and required him to act. . . .  The

interests of Gordon's other "master," the United States Government, were not compromised, but

rather furthered – and furthered in a foreseeable and foreseen manner – by Gordon's service to

the hospital." Ward, 999 F.2d at 1404.[8]  In this case, there is at this time insufficient evidence

---

[7] In addition, McLean was no longer acting as the FBI's "borrowed servant" under
Washington law when she made the post-investigation press contacts because the FBI was not
controlling, directing, or supervising those contacts. See, e.g., Brown v. Labor Ready NW, Inc.,
113 Wn. App. 643, 649 (2002) (explaining that pursuant to the borrowed servant doctrine, "the
sole question for vicarious liability . . . is whether the master accepted and controlled the service
that led to the injury").

[8] See also Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 662 (D.C. Cir.
2006) (per curiam) (holding that a congressman's allegedly defamatory statements to the press
were within the scope of his federal employment because the "appropriate question, then, is
whether that telephone conversation – not the allegedly defamatory sentence – was the kind of
conduct Ballenger was employed to perform").  Similarly, in Turley, a sheriff assigned to a DEA
task force allegedly made defamatory statements to judicial officers in the course of applying for
a search warrant and during a state bond hearing.  The court found that he was acting in the
scope of his federal employment because "[g]etting a search warrant and testifying at a bond
hearing are acts routinely performed by federal law enforcement officers."  503 F. Supp. 2d at

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 7

that McLean's post-investigation contacts with the press furthered the FBI's interests.

As a final matter, neither party has requested an evidentiary hearing.  Nor does one appear necessary at this point.  Accordingly, the Court has considered the matter based on the documentary evidence.  See, e.g., Green, 8 F.3d at 698 (9th Cir. 1993).  However, after discovery has progressed, McLean may move again for summary judgment or may assert this defense at trial if appropriate.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES McLean's motion to dismiss (Dkt. #39).

DATED this 11th day of February, 2008.

*Mht S Lasnik*
Robert S. Lasnik
United States District Judge

---

916.  If it turns out that McLean was authorized to speak with the media as part of her continuing efforts to protect her sources even after the investigation was terminated, then even untrue and defamatory statements might still be considered related to her federal employment. At this point, for 12(b)(6) and summary judgment purposes, the evidence suggests McLean was not authorized by the FBI to speak to the media at all after the investigation was over.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 8